# CHARLESTON.

MAYHEW v. CLARK.

*(GREEN, JUDGE, absent.)

Submitted September 11, 1889.—Decided November 20, 1889.

FRAUDULENT CONVEYANCE—BURDEN OF PROOF.

S. E. C. being in November, 1874, the owner of one half interest in a lease of certain lots of land located in Ritchie county, West Virginia, on which some oil wells had been bored, and also of certain fixtures and personal property appertaining thereto, being at the time indebted, assigned said leasehold property and fixtures &c., to B. his wife's brother, and in consideration therefor B. executed to him his three notes for $2,000.00 each, one of which was afterwards changed into four notes, two of which were for $666.66⅔ each, and the remaining two for $333.33⅓ each, and as a farther consideration B. was to pay to G. a debt owed by C. of between three and four thousand dollars. On the 12th of February, 1875, B. assigned said interest in said leasehold property to L., a cousin of H. M. C. the wife of C., and on the same day L. assigned said property to said H. M. C., the wife of C., receiving the notes which B. had executed to C. in consideration therefor, which notes L. turned over to B. which notes said H. M. C. swears she received from her husband C. without consideration. At the expiration of said lease a new lease on said property was executed to H. M. C. by the grantor in said original lease without any consideration moving from said H. M. C., but for certain valuable considerations furnished by her husband. In a controversy between the creditors of the husband and the wife as to the right to subject said property to the pay-

*On account of illness.

ment of debts contracted by the husband before said assignment to B. HELD:

I. The burden of proving that said assignment to B. was for a valuable consideration and *bona fide* devolves upon the wife.

II A voluntary conveyance will be declared fraudulent as to subsequent creditors, if from the circumstances and other evidence the court is convinced, that the deed was made with intent to defraud such creditors; and the conveyance being voluntary, it is immaterial whether the grantee had notice of such fraud.

III. A case in which the facts proven are such as to lead to the conclusion that the transfer of the husband's property to his wife's brother, and from him to his wife's cousin, and thence to his wife without consideration, was made with fraudulent intent and was void either as to existing or subsequent creditors.

*J. A. Hutchinson* and *O. Johnson* for appellants.

*W. A. Miller* and *Van Winkler & Ambler* for appellees.

ENGLISH, JUDGE:

This was a suit in equity, brought in the Circuit Court of Ritchie county, by F. L. B. Mayhew, George Delano and James A. Frussel, partners trading under the firm name and style of F. L. B. Mayhew & Co., against S. E. Clark, H. M. Clark, his wife, G. F. H. Betts, J. H. Carrington and Henry A. Carrington, the last two partners as J. H. Carrington & Co., James M. Lemon and R. W. Gilchrist, in which the plaintiffs claim in their original bill that said G. F. H. Betts, S. E. Clark and James H. Carrington and Henry A. Carrington, the two last partners (lately) doing business as J. H. Carrington & Co., are jointly indebted to the plaintiffs in the sum of $678.04 with interest thereon from the 15th day of October 1875, being the amount of a negotiable note and charges of protest thereon, which was made in the State and city of New York on the 13th day of August, 1875, by G. F. H. Betts payable to the said S. E. Clark sixty days after the date thereof for value received, and which the said S. E. Clark on the day and at the place last aforesaid, in the regular course of business and for valuable consideration, endorsed by signing his name on the back thereof, and delivered to the said firm of J. H. Carrington & Co., and the said firm after-

wards at the place and on the day last aforesaid, for a valuable consideration and in regular course of business, endorsed their firm name on the back thereof, and delivered the same to plaintiffs, who thereupon became the holders and *bona fide* owners thereof; that said note was duly presented and protested at maturity, and that no part of the same has been paid; that said S. E. Clark was a non-resident of this State but that he held some property in this State in the said county of Ritchie, consisting of certain leasehold enterests in certain real estate for the purpose of operating the same for the production of oil therefrom, one parcel of said land being leased by him from the West Virginia Oil and Oil Land Company, a corporation, describing the same, which lease being for the term of ten years from the date thereof, and that said Clark had entered on said real estate and was then in possession thereof, operating the same for oil, and had obtained several wells thereon and was producing some oil therefrom; and that said Clark also had the undivided one half interest in and to four several lots of land in the said county with the wells, machinery, tools and fixtures thereon situated, known as lots 2, 3, 4 and 5, on Whitwood Run, which were leased by said West Virginia Oil and Oil Land Company to one R. W. Gilchrist on the 7th day of December 1870, for the term of ten years from the date thereof; that on the 13th day of September 1870, the said R. W. Gilchrist assigned and transferred to said S. E. Clark an undivided one half interest in said lots of land, and that said Gilchrist and Clark bored and obtained several valuable wells thereon, and put and placed valuable machinery and fixtures thereon, and that said Clark had a one half interest in all said property and the oil produced from said well, and that by the terms of a partnership agreement between said Gilchrist and Clark, Gilchrist was to have entire control of the business, and Clark was to receive from time to time the net proceeds of said property in oil or money. They also claim that they have sued out an attachment in said suit which has been levied upon said lot or parcel of land leased by said company to said Clark, and also upon the interest of said Clark in the lots last aforesaid owned by him in connection with said Gilchrist, and also his interest in the personal property thereon located; that on

the 27th day of November 1874, said Clark made a pretended sale of his interest in the said property owned by him jointly with said Gilchrist to said G. F. H. Betts, and in said assignment he recites that he, said Clark, was indebted to said Gilchrist in the sum of $3,953.11, and said assignment was made for the professed consideration of $8,000.00 and the payment by Betts of the said sums of money due from said Clark to Gilchrist, or so much thereof as the latter should be unable to collect from the West Virginia Oil and Oil Land Company, which was also liable to said Gilchrist for said money; that on the 12th day of February 1875, the said Betts assigned the said interest in said property theretofore assigned by said Clark to him, to one James M. Lemon for the purpose of securing as recited therein, three notes that had theretofore been made by said Betts; two of which were for $2,-000.00, and the other for $2,046.89, but said assignment did not state to whom said notes were executed, but plaintiffs claim that they are informed and believe they were executed to said Clark as the professed consideration of the assignment by him to Betts, or a part thereof, and that said assignment provided that if the said Betts should fail to pay the said notes, or either of them, at maturity, the said assignment was to become an absolute assignment of said interest to said Lemon for the payment of said notes, and the same were to be given up to him, said Betts; and that on the same day the said James M. Lemon for the nominal consideration of one dollar, transferred said agreement and all his right, title and interest in said property, to Harriet M. Clark, the wife of said S. E. Clark, and on the 19th day of May 1875, said Betts assigned said interest in said property to said H. M. Clark, in consideration of the surrender to him of the notes mentioned in said assignment by him to Lemon, which assignments were acknowledged and recorded, in the county of Ritchie; and that said Betts did not pay any of said notes mentioned in his assignment to said Lemon at maturity; and that said three assignments were only a contrivance of the said Clark to cheat and defraud his creditors, that none of them were *bona fide* transactions, that the only consideration received by Betts for the assignment to Lemon, was the surrender of the notes which he had given to Clark, and

which said Clark owned and controled at the time of the assignment by Betts to Lemon, and that said H. M. Clark gave no consideration to the said Lemon, Betts or S. E. Clark for the assignment of said property to her, but that said assignment was controlled by said Clark with the intent and for the purpose of defrauding his creditors; and that said Clark managed and controlled his interest in said property during the whole time, receiving the rents, issues and profits thereof to his own use and benefit; that at the time said Clark indorsed the note aforesaid, he claimed to be the owner of said property with said Gilchrist, and carefully concealed from plaintiffs and said Carrington & Co., that he had made an asssignment thereof, and plaintiffs took said note partly on the credit of said Clark created by the ownership of said property, that in the contract between said Clark, Gilchrist and Betts, a lien is given said Gilchrist in the interest of said Clark in said property to secure to Gilchrist the payment of a sum of money due from Clark to him, part of which has been paid; that said Clark has no other property than that mentioned in the plaintiff's bill, and at the time of said assignment to his wife he was indebted to insolvency; that his said property is considerably incumbered, and plaintiffs had caused it to be attached in a suit at law in said court, for the amount of a note for $1,221.95, executed by said Clark to said Carrington & Co.; and they pray, that said several assignments may be declared void as to plaintiffs and that said Clark's interest in the property owned by him jointly with said Gilchrist, may be sold to pay their said debt after paying what may still be due said Gilchrist, and that his other property therein mentioned may be sold also for the payment of said debt, and that said Gilchrist may be enjoined from delivering said Clark any farther rents and profits from said wells owned jointly by them.

The defendants, S. E. Clark and H. M. Clark, demurred to plaintiff's bill, and also filed their joint and separate answer to the same, in which they admit the making and endorsement of the note in the bill mentioned and described, but deny that it was duly or properly protested, they also deny the insolvency of Betts or Carrington & Co., or any or either of them at the time of the alleged protest, or at any

time since. They also deny that S. E. Clark is the owner of the several lots on Whitwood Run, mentioned and described in exhibit D., with the bill, but claim that said property is the sole and separate property of H. M. Clark, his wife. They admit the partnership with Gilchrist in producing oil, but claim that it ceased with the transfer to G. F. H. Betts. They admit the several assignments mentioned in the bill, but deny that the same was any contrivance on the part of S. E. Clark to cheat and defraud his creditors, and claim that S. E. Clark was not a debtor of plaintiffs at the time said assignments were made. They deny that H. M. Clark has no control over the rents of said property, and claim that her husband S. E. Clark, was appointed by her as her agent to manage the same, and that ever since the assignment said business has been transacted openly. They disclaim any concealment on the part of said S. E. Clark, but claim that plaintiffs had notice of said transfers. They deny the insolvency of S. E. Clark at the time of said transfers, or that the liens on said property are greater than its value, and said H. M. Clark claims that she was a *bona fide* owner for value of the interest in said Whitwood Run property.

On the 10th of November 1881, the plaintiffs filed an amended bill, in which in addition to the matters contained in their original bill they claim that at the October term 1878, they obtained a judgment against S. E. Clark for $1,221.95 with interest from April 30th, 1876, and $48.30 costs, and a judgment on the order of attachment in said action, and an order of sale of the leasehold interest granted to said S. E. Clark by the West Virginia Oil and Oil Land Company by deed dated January 3d, 1876, for the term of ten years, and the undivided half interest in the Gilchrist lease, and the personal property therein mentioned, plaintiffs agreeing with said Clark not to sell the last mentioned property until the controversy in relation thereto should be decided in this suit, and at the April term, 1878, of said court, by consent of said S. E. Clark, a decree was rendered by said court in favor of plaintiffs against said Clark for $678.04 the amount of the note in the bill mentioned with interest from the 15th day of October 1875, and $67.20 costs, the said Clark agreeing to pay the same in monthly instalments

of $50.00 each, which complainants agreed to accept, and the suit was continued as to all other matters of controversy in said case; and they allege that no part of said judgment or decree has ever been paid by said Clark or any one for him; that since the commencement of their original suit, to-wit: on the the 7th day of December 1880, the term of years for which said Gilchrist lease was granted, expired, but prior thereto, to wit, on the 7th day of February 1880, the said S. E. Clark had obtained from the West Virginia Oil and Oil Land Company, a new lease of the same lots or parcels of land and the wells thereon, for the term of twenty years from the expiration of the former lease, which said lease the said S. E. Clark caused and procured to be made to his wife the said Harriet M. Clark, although the consideration for making said lease moved solely from said S. E. Clark, and the said Harriet M. Clark never paid one dollar or gave any valuable consideration whatever therefor; that the said property is very valuable, the net profits of said lease since the expiration of said Gilchrist lease, being six thouand dollars per year, and the value of said lease for the term of twenty years was at least $20.000.00; that said S. E. Clark had a large claim against said Company for services rendered them as their agent, and for expenses incurred &c., and in 1879 he brought his action against said Company to recover said claim, and said Clark also claimed and held the large parcel of land demised to him by said Company by its lease dated the 3rd day of January 1876, which is mentioned in said original bill, and said Company brought suit in the United States District Court, against said Clark, to recover possession of said land, and forfeit said lease, and that the principal consideration for the granting of said lease of the 7th of February 1880, by said Company to said Clark, was the relinquishment by him of his claim against said Company and his consent to the forfeiture of his lease of the 3rd of January 1876, and abandonment of the possession of the said parcel of land therein mentioned, and the said Clark did accordingly dismiss his suit against said Company and abandoned his claim against it, and permitted the said Company without opposition to take a judgment against him for possession of said parcel of land, and for-

feited his said lease of January 3rd 1876; and as a farther consideration for said lease by said Company to Harriet M. Clark, said S. E. Clark agreed to pay to B. S. Compton the president and business-manager of said Company, $1,500.00, and secured the same by deed of trust executed by himself and wife.

They farther allege that said Compton refused to allow the said Harriet M. Clark to enter into the said leased premises mentioned in the lease to her of February 7th 1880, because said S. E. Clark had not fully complied with the conditions upon which said lease was made, and the said S. E. Clark for himself and as attorney in fact for his wife, executed and delivered to said Compton their two joint bonds for $1,500.00 each, payable on the 7th day of December 1881, and 7th day of December 1882, with interest, and said Clark and wife executed a deed of trust upon the undivided three fourths interest in said leasehold property, and the personal property thereon, to secure the payment of said sums of money, and that while said deed of trust recites that the $3000.00 thereby secured was money loaned to S. E. Clark and Harriet M. Clark; in truth, and in fact $1,500.00, part thereof, was the purchase-price of the undivided half interest in said personal property purchased by said S. E. Clark from said Compton, and that $1,500.00, the residue thereof, was the gift or bonus which said S. E. Clark promised the said Compton for making the said lease of February 7th 1880, to said Harriet M. Clark, and that there was no consideration for said promise made by said Clark to pay said $1,500.00, to Compton; and no consideration for executing the bond for said sum; that said S. E. Clark at or about the time he executed said bonds and trust-deed aforesaid, executed for himself and as attorney in fact for his wife, a conveyance of an undivided one fourth interest in said leasehold property to John A. Hutchinson, in payment of a large sum of money due from him to said Hutchinson, and received from said Hutchinson some money and securities as further payment therefor, and that said Hutchinson is now the owner of one fourth interest in said property; and they allege that said Harriet M. Clark never at any time, paid or furnished any money or valuable thing

for said property, that she had no part in making any of the contracts and arrangements in relation thereto, but each and all of them were negotiated, executed, and managed by the said S. E Clark without her advice or consent; that she spent most of her time in New York, was very seldom in this State, and knew little or nothing about the business that was being done by her husband, in relation to the property above mentioned, or to the contracts or agreements in relation thereto, and that in fact all of said leasehold property, the wells and fixtures, and all the personal property aforesaid, was and continued to be until his death the rightful property of the said S. E. Clark, paid for by him, but placed in his wife's name for the purpose of delaying and defrauding the plaintiff, and other creditors of said Clark; that he was indebted to insolvency, and continued so to the time of his death, and undertook by said fraudulent conveyance to his wife to prevent the plaintiffs and his other creditors, from subjecting said property to the payment of their just claims against him ; that executions were issued on said judgment and decree, against the goods and chattels of said S. E. Clark, directed to the sheriff of Wood county, on the 3rd of July 1881, where he was then residing, which were returned "no property found ;" that said H. M. Clark has been in possession of said property since the death of said S. E. Clark, receiving the rents and profits thereof, which amount to $5,000.00 per annum. They pray that said Compton and Herman Loomis trustee, may be made defendants as well as the defendants in the original bill. They allege that said debt due Gilchrist, has been paid off and discharged, and they pray that the undivided three fourths of said property mentioned as granted by the lease of March 7th 1880, to Harriet M. Clark, and the personal property thereon—and especially the undivided one half interest in said personal property on said lease, which was levied on by said attachments—be held liable for plaintiffs claim, and that the trust deed to secure Compton the sum of $3,000.00, may be declared fraudulent and void, and that the property in said trust deed mentioned, may be subjected to the payment of the amounts due from said S. E. Clark to complainants.

The defendant H. M. Clark, demurred to said original and amended bills, and answered, claiming that the said negotiable note made on the 13th day of August 1875, by G. F. H. Betts, and endorsed by said S. E. Clark for $678.04 in the original bill mentioned, was for the accommodation of said Betts, and said J. H. Carrington & Co., and that S. E. Clark received no value for the same. She also denies that said J. H. Carrington & Co., or the said F. L. B. Mayhew & Co., paid any value for said note, or that they are entitled to recover the same in a court of equity. She also denies that said S. E. Clark on the 13th of August 1875, or at the time of the institution of this suit, owned an undivided one half interest in said lots 2, 3, 4 and 5 on Whitwood run described in the original bill, or that he had any interest therein, then or since that time, but claims that she became the *bona fide* purchaser thereof, about the——day of February 1875, and the 19th day of May 1875, without notice of any claim of the said J. H. Carrington & Co., or F. L. B. Mayhew & Co., against said S. E. Clark, and without any notice or knowledge of any fraudulent intent or scheme, or device of either said Betts or Clark, or any one else, if any existed, which she denies, and contraverts. She also denies that the assignment made to her was a voluntary one or made with intent to defraud creditors; and she denies that after said transfer was made to her of said half interest in the Gilchrist property aforesaid, that said S. E. Clark has taken the use of products, rents, profits and issues of said property to his own use, and disposed of the same at his own will and pleasure, or that he managed and controlled the same for his own use and benefit. She claims that said S. E. Clark being a practical oil-operator and competent to manage the production and sale of oil, she appointed him as her agent to receive the rents and profits of her interest in said property, and he was allowed his time and expenses for board &c. out of said rents and profits, and she received the residue. She claims that the assignment of the Gilchrist property to her was a *bona fide* transaction for a valuable consideration. She denies the insolvency of said S. E. Clark, but says he did not claim to be the owner of one half of the Gilchrist lease and property at the time he

was induced to endorse said note, and at the time of making the other note referred to in plaintiff's bill, and says that if plaintiffs had a just claim against said S. E. Clark, they could have long since made it out of his property and oil interests. She denies that said S. E. Clark ever put one dollar in any manner or form into the purchase of the new lease, and denies every material allegation in the bill or amended bill contained.

On the 23rd day of February 1884, C. A. Hinsdale presented to the court her petition, which was ordered to be filed, in which she asserts a claim against said S. E. Clark for $864.64, as of the 20th of February 1878, evidenced by three notes of said Clark payable at the St. Nicholas Bank, New York, one for $260.63 and the other two for $300.00 each, at twelve, eighteen and twenty four months respectively, and she adopts the allegations of plaintiffs in said bill and amended bill, as to the fraudulent transfers of said property, and she asks leave to file her petition and be made a party defendant, to this suit, and that she may be decreed to be entitled to have her debt and claim out of the property and estate mentioned in the cause.

Several depositions were taken and filed in the cause by both plaintiffs and defendants, and on the 27th day of June 1885, the defendant H. M. Clark demurred to and answered the petition of Hinsdale, to the filing of which at this time the said Hinsdale objected and asked the court to consider a general replication as filed to said answer in case said answer was allowed to be filed, and the plaintiffs and said Hinsdale thereupon moved the court to appoint a receiver of the property mentioned in the cause, which motion was set down for argument, and the said H. M. Clark filed exceptions to the depositions of James H. Carrington and others, and the exhibits made part thereof, and to the deposition of L. L. Johnson filed in the cause by the plaintiffs, which exceptions were set down for argument.

And the cause having been heard upon the pleadings, proofs and exhibits, the court below decreed that the consideration for the lease and demise of land for oil purposes mentioned in the deed of lease, made and executed by the West Virginia Oil and Oil Land Company to

the defendant Harriet M. Clark, on the 7th day of February 1880, a copy of which was filed as an exhibit with the said amended and supplemental bill, passed wholly from S. E. Clark deceased, late husband of Harriet M. Clark, and that no part thereof was paid by said Harriet M. Clark, and that the plaintiffs were entitled to the relief prayed for by their said original and amended bill, and that they were entitled to have the three fourths undivided interest of said Harriet M. Clark in the leasehold and personal property mentioned in said deed of lease, except lot No. 1, being lots numbered 2, 3, 4, and 5, and the personal property situated thereon on Whitwood run, in said Ritchie county, now in the possession and under the control of said Harriet M. Clark, sold for the payment of the indebtedness of the said S. E. Clark to the complainants, as set out in said bills, amounting at the date of said decree including interest and costs to $3,142.53, and also that petitioner C. A. Hinsdale, is also entitled to have her said debt against said S. E. Clark satisfied out of the proceeds of the sale of said leasehold and personal property, which amounted at the date of said decree to $1,176.47 with interest from the date of said decree, and directed that unless the said H. M. Clark, should within thirty days from the date of said decree, pay to the plaintiffs and said C. A. Hinsdale, said respective amounts, with interest thereon from that date, then directing special commissioners therein named to make sale of said three fourths undivided interest of said H. M. Clark in said leasehold and personal property upon the terms and in the manner therein prescribed, and to apply the proceeds of said sale first to the payment of the costs of this suit, then to the indebtedness due to complainants, then to the debt due said C. A. Hinsdale as aforesaid, and the residue if any to said H. M. Clark. From this decree the defendants H. M. Clark and J. B. Hallom, administrator of the estate of S. E. Clark, obtained an appeal to this Court.

The proofs in the case show that S. E. Clark sold said leasehold property to one Geo. F. H. Betts, a brother of his wife H. M. Clark, as said Betts states, for $6,000.00, and that he Betts, executed his notes for that amount to said S. E. Clark, and when asked if all these notes had been paid by

him, he stated they were, and that he paid them all himself. He is then asked, "Is not the note or acceptance held by Mayhew & Co., and included in this suit, one of the notes or acceptances that you gave Mr. Clark as a portion of the purchase price?" And answered, "I do not know." When asked if this note or acceptance is for the amount of $666.66 then is it one of the notes or acceptances? He answered, "Yes." He farther states that he sold one half interest in said lease to James M. Lemon, in April, or the 1st of May 1875." When asked "what price did Mr. Lemon pay you for said lease?" answered, "I can't tell the amount, it was so long ago." (It appears this deposition was taken on the 25th of January 1883). When asked, "Did Mr. Lemon ever pay you anything in cash for said lease?" he replied, "He paid me two notes of $2,000.00 each, and one of $333.33⅓, and also one of $666.66 and two or three acceptances of his, I had previously made drafts on him which he had accepted and paid, I can't tell the amounts." When asked, "In what manner did Mr. Lemon pay said notes?" answered, "They were notes which I gave Mr. Clark which Mr. Lemon said he bought of him, Mr. S. E. Clark." Again when asked to state the actual consideration paid to him by Mr. Lemon? says, "I can't remember." He don't recollect whether Mr. Clark was present at the time he transferred the lease, he won't be positive, he might have been, won't say he was not.

It must be regarded as somewhat remarkable that the memory of this witness is so defective in reference to a transaction involving $6,000.00, which happened eight years before, he states that he resides in New York and is a travelling agent. Could it be that transactions of this magnitude were so frequent as to create no impression upon his mind? At the time of this transfer he says he was living in West Virginia and Clark was living in Brooklyn, New York, he owned six other wells; Clark told him what he would take and he took him up; it was $6,000.00 and to assume the debt owing to Gilchrist of $3,000.00 or $4,000.00, one half of which Clark was liable to pay, (he can not come within one $1,000.00 of the Gilchrist debt) he was to pay the $6,000.00 in three notes of $2,000.00 each, payable in four, eight and twelve months; afterwards one of these notes was

divided into four notes, two of $666.66 and two of $333.33. When asked what was the consideration of the sale to Lemon? answered, "I can't tell exactly," he said he owned the notes I had given Clark the two $2,000.00 notes and one $666.66, he also owned some two or three drafts I had drawn on him which he accepted and paid, the total amount of the notes and drafts which he held against me was between $5,000.00 and $6,000.00, he could not tell certainly. When Mr. Lemon is introduced as a witness he states that he is a cousin of Mrs. H. M. Clark, and Mr. Betts is her brother, and when asked what was the consideration paid to him by Mrs. Harriet M. Clark for the transfer of that lease to her, answered, "Mrs. Clark gave me Mr. Bett's notes, which I supposed she received from her husband," so that when the matter is traced around it amounts to this. Mr. Betts gave Mr. Clark his notes for the lease, Mr. Clark handed Mr. Betts's notes to his wife and she passed them through the hands of her cousin, Mr. Lemon, to her brother and the assignment was made to her through Mr. Lemon, but what consideration did she pay? She only returned to her brother his notes he had executed to Clark, with the exception of one which with a little interest added making it aggregate $678.04, was endorsed by said S. E. Clark to J. H. Carrington & Co., and by them was endorsed to the plaintiffs, Mayhew & Co., who are seeking to recover the same from the estate of said Clark, in this suit.

It will be perceived by reference to the exhibits that the assignment from S. E. Clark to Betts, was on the 27th day of November 1874, and it was then that Betts executed to him his note, for the purchase-money, and although said Betts in his deposition says he paid all of said notes himself, yet when asked "Is not the note or acceptance held by Mayhew & Co., and included in this suit one of the notes or acceptances that you gave Mr. Clark as a portion of the purchase-price, answered, "I don't know," he was then asked if this note or acceptance is for the amount of $666.66, then is it one of the notes or acceptances" and answered: "yes." The deposition of F. L. B. Mayhew, throws light upon this transaction; he says: "We first discounted a note for the accommodation of Mr. Clark. Said note was drawn by G. F. H. Betts to the order of S. E.

Clark for $666.66, that note at maturity was not paid. We notified Mr. Clark and requested a new note extending time sixty days. In due time received from Mr. Clark another note made by G. F. H. Betts to the order of S. E. Clark and endorsed by him for $678.04, this last note being a renewal of the first note with interest added. Now Mr. Betts in his deposition says that this $666.66 note was one of the purchase-money notes, executed by Betts to Clark, and it will be presumed he discounted the same shortly after he got it from Betts, and that he had the $2,000.00 note changed into four smaller ones for the purpose of raising money on them; his brother-in-law Betts, being ever ready to accommodate him as he appears to have been in the renewal of this note to Mayhew & Co. If we are correct in this, the debt of plaintiffs existed at the time of the transfer to Lemon, and from Lemon to Mrs. H. M. Clark of said property, and again there can be no doubt left as to the intent of said S. E. Clark when we refer to the deposition of J. H. Carrington, when asked, "Do you know anything about a consideration paid to Mr. Lemon before the transfer (meaning the transfer of said lease &c.,") answered, "I don't remember that there was anything said in regard to the amount paid. It was simply a statement that the transaction was made for the purpose of receiving the property that his, Mr. Clark's creditors could not take possession of it, and when asked, what did Mr. Clark say to you? he replied : "Mr. Clark said the object of the transfer from Mr. Lemon to Mrs. Clark, was to prevent his creditors from getting hold of the property," "to secure it to Mrs. Clark," and while Mrs. Clark does not appear to have been present at this conversation, and it would of course not give her any notice of this intent, yet it is an admission on the part of said Clark of the existence of creditors at that time, and of his intention to defraud them by putting this property in his wife's name.

Now in the case of *Herzog* v. *Weiler*, 24. W. Va. 199, this Court has held that "where an insolvent husband transfers to his wife's brother by deed for an alleged valuable consideration, all his personal property; soon thereafter the said brother transfers the said property in like manner to another brother, and the latter immediately transfers it to his sister,

the wife· of· the insolvent ·husband, as a gift in consideration
of fraternal· affection.   In a controversy between the wife
and the creditors of the husband; as·to· the right to have
said· property subjected to the payment of debts contracted
by the husband· before the transfer by him; that the burden
of proving that the transfer by the husband to the brother
was *bona fide* and for a valuable· consideration, rests upon the
·wife.   A court of equity will declare·a voluntary convey-
ance fraudulent as to subsequent creditors if from the circum-
stances and other evidence, the Court is convinced the deed
was·made with the intent to defraud such creditors.   The
conveyance being voluntary, it is immaterial whether the
grantee had notice of such fraud.   See *Castard· et ux.* v.
*Bowles,· et al.* 24 W. Va. 730·."

  In ·the case of *Burt* v. ·*Timmons*, 29 W. ·Va., 441,· this
Court held that "A transaction · between father and· child,
husband˙ and wife, brother and sister, or between others,
between· whom ·there exists ˙a natural and strong motive to
provide for a dependent at the expense of honest creditors, if
such transaction be impeached as fraudulent, may be shown
to be fraudulent by less proof, and the party claiming the
benefit of such transaction, is held to a fuller and ·stricter
proof of· its justice, and if the fairness· of the transaction,
after it is shown to be *prima. facie* fraudulent, than would·be
required if the transaction was between strangers."   "When
a wife purchases land or other property, the burden ˙is upon
her to· prove distinctly that she paid for the land or other
property with funds ˙not furnished by her husband."   And in
the· case of *Core* v. *Cunningham*, 27 W. Va. 206.   This·
Court held that "transfers of property either · directly or in-
directly,· by an insolvent husband to his wife, during cover-
ture, are justly regarded with suspicion, and unless· it clearly
appears that the consideration was paid from the separate
estate of the wife, or by· some one for her out of means not
derived either directly or remotely from the · husband, such
transfers will be held fraudulent and void, as to the creditors
of the husband," also, "a conveyance of land made by a
third person to·a wife, which is fraudulent in fact, will be
held void as to·subsequent as well as existing creditors of
the husband," and "where the facts· and circumstances

necessarily establish complicitly of the grantee in the fraudulent intent, it is not necessary by direct proof to show notice of such intent to the grantee."

Now it seems to me that the facts and circumstances proven in this case taken in connection with the law above quoted, clearly indicate that the assignment made by said S. E. Clark to Betts, and from Betts to Lemon and from Lemon to Mrs. H. M. Clark, were made with the intent to hinder, delay, and defraud the creditors of said S. E. Clark, there is no proof or pretence that said H. M. Clark paid any consideration for said transfer, but on the contrary the proof shows that nearly the entire purchase-money was paid by the return to Betts through the hands of Lemon of the notes he Betts executed to said S. E. Clark, the title passes to her through her brother and cousin, and the consideration comes, if consideration it can be called, from said S. E. Clark in the surrender of the notes he held against Betts. She offers no proof whatever, to show that she paid any consideration for said notes; and if any such proof existed it is natural to presume, she would have produced it.

Now it appears that the West Virginia Oil and Oil Land Company on the 7th of February, 1880, executed a lease to Mrs. Harriet M. Clark for lots 2, 3, 4 and 5, on Whitwood run, and on the face of the lease recites that for and in consideration of the matters hereinafter mentioned and referred to doth grant and demise &c.; and no consideration is therein set forth, except that it is therein provided that the agreements, covenants and stipulations of the said deed of lease to R. W. Gilchrist shall be the agreement and stipulation of said deed and were made part of said lease, showing that the new lease was upon precisely the same terms as the old one, which provided that one third of the oil produced should be delivered in barrels furnished by the lessor as royalty. Mrs. H. M. Clark in her deposition does not pretend that she paid any consideration for this new lease, and by referring to the deposition of L. L. Johnson who states that he has been treasurer and director of the West Virginia Oil and Oil Land Company since 1880, and that the consideration for the new lease was the release of all the property included in the Fate run and Short run lease by S. E. Clark to the West

Virginia Oil and Oil Land Company, an action having been commenced in the United States Circuit Court for the District of West Virginia, and allowed to go by default in consideration for the lease executed to his wife on the Whitwood run property, and when asked if Mrs. Harriet M. Clark paid any money or gave anything of value to said company for said lease, answered, "None that I know of," and when asked, "If she had paid anything would it not have been known to you," answered, "There is no doubt but it would have been," and on cross-examination he states that he was present and heard the question of consideration discussed between the president of said company and S. E. Clark and both of them stated to him the terms of the consideration as stated in his direct examination. Mrs. H. M. Clark, in her deposition, claims that she received $8,000.00 insurance money on the life policy held by her husband, which she says was payable to her and that she has the policy but she does not produce it. Now it will be remembered that notwithstanding the transfer from S. E. Clark through Betts and Lemon to Harriet M. Clark in 1875, the said S. E. Clark remained in possession and managed said property as usual, she says as her agent, but it may be regarded as somewhat remarkable that this lady living in New York, whose husband for several years had been operating in oil in West Virginia should suddenly conceive the idea of becoming the owner of the property herself and making her husband the agent. What good cause was there for making this change? It was not because she found fault with his management, for the evidence shows she continued him as the agent.

In the case of *Lockhard & Ireland* v. *Beckley, et al,* 10 W. Va., 87, this Court held "that where a husband or father purchases land in the name of his wife or child, or in his own name and in either case procures a conveyance to be made to the wife or child, there is no resulting trust for the husband or father as in the case of a purchase by one and a conveyance to a stranger. But such a deed if made with intent to hinder delay or defraud the creditors of the party so purchasing may at the suit of such creditors be impeached, being within the statute against fraudulent conveyances,

also fraud is to be legally inferred from the facts and cir-
cumstances of the case when these facts and circumstances
are of such a character as to lead a reasonable man to the
conclusion that the conveyance was made with the intent to
hinder, delay or defraud existing or future creditors."

In the case of *Goshorn's Ex'r* v. *Snodgrass, et al*, 17 W.
Va., 717, this Court holds that "The proposition that
fraud must be proved and not presumed, is to be understood
only as affirming that a contract honest and lawful on its face
must be treated as such, until it is shown to be otherwise by
evidence either positive or circumstantial. Fraud may be
inferred from facts calculated to establish it. If the facts estab-
lished afford a sufficent and reasonable ground for drawing the
inference of fraud the conclusion to which the proof tends must
in the absence of explanation or contradiction be adopted."

It is earnestly contended by counsel for the appellant,
that by suing upon and claiming the note described in
plaintiff's bill which represents part of the consideration
or price for said half interest sold by Clark to Betts, the said
plaintiffs affirmed the transaction and are estopped from dis-
puting the validity of the sale for which said note as part
consideration, that Clark could not impeach the sale and the
plaintiffs who claim in privity with him to the extent of said
note have no better footing than he had. This position as
we think can not be sustained when taken in connection
with the circumstances of this case. It will be perceived
that S. E. Clark assigned and transferred his interest in the
Gilchrist lease to the defendant Betts on the 27th of
November, 1874, and said Betts executed his notes to him for
$2,000.00 payable six months after date, $2,046.89 payable
nine months after date and another payable twelve months
after date for $2,000.00. It appears that one of these notes for
$2,000.00, was divided into four notes two for $666.66⅔, and
two for $333.33⅓ and although it does not appear when these
smaller notes fell due, it does appear from the deposition of L.
B. Mayhew that he first discounted a note for the accommo-
dation of Mr. Clark drawn by G. F. H. Betts to the order of
S. E. Clark, for $666.66 which was not paid at maturity.
Mr. Clark was notified and gave a new note made by G. F.
H. Betts and payable to the order of S. E. Clark for $678.04

at sixty days and endorsed by said S. E. Clark which is the note sued on and described in the bill, this note was discounted by plaintiffs in regular course of business and the plaintiff's right to recover from said S. E. Clark on said note arises from the fact that he endorsed it to them, and they paid him the money upon it, and Clark's contract as endorser was that if Betts did not pay it he would, their right to recover on said note did not depend on the question as to whether the transfer of lease-hold property to said Betts was valid or void, they were so far as the evidence discloses innocent purchasers and holders of this note and upon its nonpayment they had a right to recover the same, and in so doing subject any property belonging to said Clark to the payment thereof, in this manner, the question is incidentally raised as to the validity of the transfer of this property from S. E. Clark through Betts and Lemon to the defendent H. M Clark. Again although the note for $666.66⅔ was originally made by said Betts payable to the order of said Clark, and according to his statement formed part of the $6,000.00 in notes executed by him to said Clark, yet when said Betts and Lemon transfer said lease hold property, to the defendant H. M. Clark, Betts states that he was paid by the return of these notes and some acceptances which Lemon had paid for him, and the defendant, H. M. Clark, states that she received these notes from S. E. Clark and when asked: "You say you transfered them to Lemon?" (meaning said notes) replied: "Paid them to Mr. Lemon; yes, $6,000.00 altogether." So it seems the note sued on in this case was in the hands of Mayhew &Co., and Lemon and Betts were paid without reference to said note; Mrs. H. M. Clark says she paid $6,000.00 in notes and Lemon conveyed her the property for the notes. This note in controversy then must be regarded an independent transaction, and when we consider the liabilities assumed by the indorser, we find that Daniels on Negotiable Instruments, Volume 1, Sec. 669a, says. "The indorser engages (1) that the bill or note will be accepted or paid, as the case may be according to its purport, but this engagement is conditioned upon due presentment, or demand and notice; he also engages (2) that it is in every respect genuine, (3), that it is the valid instrument it pur-

ports to be, and if it turns out that any of these engagements, but that first named are not fulfilled the indorser may be sued for recovery of the original consideration which has failed, or be held liable as a party, without proof of demand and notice." We can not then see why this note should be treated and regarded in a different light from any other note of the same character, and the said S. E. Clark as indorser thereof must be treated as any other indorser of a similar instrument. After Betts had been repaid as the evidence of the defendant, H. M. Clark, Betts and Lemon show he was, and has reconveyed the property, said S. E. Clark if alive could assert no farther claim against him, and Betts could assert no claim because he admits he was repaid by Lemon. If then this property still remains the property of the estate of S. E. Clark, as the weight of the evidence in the cause clearly indicates, and these transfers were merely made for the purpose of hindering delaying and defrauding the creditors of said S. E. Clark, as I am satisfied they were, the consideration appearing to have been paid by S. E. Clark, and nothing having been paid by H. M. Clark for said property, although it was incumbent on her to show the payment of such consideration if she wished to be regarded as the owner of said property, (see *Rogers* v. *Verlander*, 30 W. Va., 620.) I am of opinion there was no error in the decree complained of, and the same must be affirmed, and the appellant must pay the costs of this appeal.

AFFIRMED.