# CHARLESTON.

## Leonard v. Smith.

(BRANNON, JUDGE, absent.)

Submitted November 28, 1890.—Decideded December 12, 1890.

SEPARATE ESTATE—TRUSTS AND TRUSTEES.

Where a wife loaned to her husband money, which was a part of her separate estate received by her before marriage, charging her husband with the same at the time, the husband expressly promising to repay it, and subsequently the husband being still solvent, on the day after a suit for assault and battery was instituted against him, conveyed to E. L. in trust real estate to secure his bond of the same date executed by him to said wife for said borrowed money due one day after date, the sale of the land to be made by the trustee at the request of the beneficiary, no actual fraud in anywise appearing, the trust-deed is valid, and the wife is entitled to have the same executed for the payment of her debt.

*Dayton & Dayton* and *U. G. Young* for appellant, cited:
9 W. Va. 552; 24 W. Va. 730; 27 W. Va. 206, 210; 29 W. Va. 441; 32 W. Va. 25; Id. 232; 2 Leigh. 104; 13 Gratt. 437; 15 W. Va. 829; Id. 512; 15 Gratt. 153; 6 S. W. Rep. 897; 15 Atl. Rep. 898; 31 W. Va. 358; 32 N. W. Rep. 194; 44 N. H. 619; 10 N. H. 219; 14 Pac. Rep. 222; 29 W. Va. 480; 27 Gratt. 740; 4 Rand. 438; 28 N. Y. 271; Sheld. Sub. §§ 1–3; 30 Gratt. 632; 66 N. Y. 363; 16 W.

Va. 791; 75 Va. 407; 10 S. E. Rep. 396; 12 W. Va. 99; 24 W. Va. 586; Code (1868) c. 139, s. 8; Code (1887) c. 139, s. 7; 23 W. Va. 579; 26 W. Va. 686; 32 W. Va. 272; Chitt. Eq. Pl. § 389 *et seq.*; Sands Su. Eq. (1st Ed.) §§ 451–462; Dan. Ch'y Pl. & Pr. (Perk. Am. Ed.) c. 34; 17 How. 145; 3 Sandf. Ch'y 273; Code, c. 125, s. 35; 14 W. Va. 741; 11 W. Va. 342; 25 W. Va. 394; 19 W. Va. 108; 14 W. Va. 637; 10 W. Va. 35; Id. 87; 17 W. Va. 901; Id. 717; 28 W. Va. 113; Id. 759; 22 W. Va. 70; Id. 671; 19 W. Va. 168; Id. 201; 21 W. Va. 233; 23 W. Va. 247; Id. 315; Id. 760; 13 W. Va. 572; Id. 29; 32 W. Va. 203; Id. 447; 29 W. Va. 389; 25 W. Va. 242; 24 W. Va. 199; Id. 405; 23 W. Va. 639; 10 S. E. Rep. 637; Id. 785; Id. 799; 1 Pars. Cont. 234.

*J. S. Fisher* and *J. Brannon* for the appellee, cited:

23 W. Va. 760; 18 Gratt. 234; 2 Bish. Mar. Wom. §§ 65, 66, 120, 516; 31 W. Va. 203; 24 W. Va. 405; 27 W. Va. 206, 209; 39 Am. Dec. 638; 80 W. Va. 554; 27 W. Va. 20; 29 W. Va. 441; 13 W. Va. 67; 94 U. S. 580; 32 W. Va. 205; 73 Am. Dec. 27; Bish. Cont. 735, 736.

HOLT, JUDGE:

On the 15th day of February, 1883, Floyd G. Smith, of Upshur county, one of the defendants below and husband of Mary E. Smith the appellant, executed to Ebenezer Leonard, trustee, a trust-deed conveying three several parcels of land in and near the town of Buckhannon, fully described, to secure his wife, Mary E. Smith, in the payment of a bond, that day executed by him to her for the sum of two thousand four hundred and twenty five dollars fifty cents, due one day after date with interest from date, executed for borrowed money. The trust-deed provided, that, if the debtor should make default, then the trustee was to sell when required by the creditor. This trust-deed was duly ackowledged, and admitted to record on the 16th day of February, 1883, at 7 o'clock a. m. On the 15th day of February, 1883, for a trespass which took place on the 11th day of February, 1883, defendant Mylius brought suit in Upshur county against Floyd G. Smith and his brother, James L. Smith, and on the 15th day of October, 1887, ob-

tained a judgment against them for two thousand two hundred dollars, with interest from that date, and costs, amounting to one hundred and fifty five dollars thirty five cents, which judgment was docketed.

On the 24th day of October, 1887, Ebenezer Leonard, as trustee, brought this suit in equity against Floyd G. Smith, James L. Smith, Levi Leonard, who held a vendor's lien on one of the lots mentioned, and Charles E. Mylius, the judgment-creditor, setting out the foregoing facts, and that Mary E. Smith and Floyd G. were married on the 6th November, 1879; that Mary E. was then the owner in her own right of a large and valuable estate, which was after marriage her sole and separate property not derived from her husband; that out of it she furnished money to buy said real estate, and that out of her other separate estate the loan was made to her husband, secured by the bond mentioned in the deed of trust, and that, to protect her lien on lot No. 34, she furnished out of her separate estate the money to pay Levi Leonard two hundred dollars, and interest, which was paid since 15th February, 1883, and therefore not included in the bond secured by the deed of trust; that he has been directed to sell, but deems it improper to do so, by reason of the liens of Leonard and of Mylius, without the direction of the court, and prays for ascertainment of liens with their amounts and priorities and the direction of the court in executing the trust.

Defendant Mylius answered, charging that the trust-deed and bond secured were fraudulent; also filed what was treated as a cross-bill, attacking the deed of trust as fraudulent. The defendants Leonard, Mary E. Smith, and others, demurred to the cross-bill, and the court sustained the demurrer as to those defendants, who were not parties to the original suit, and, as to them, dismissed it with costs. The defendant Mary E. Smith answered the original bill, denying that she out of her separate estate loaned to her husband the money to buy said real estate but alleging that she did lend him the money mentioned in the deed of trust. To this answer, there is a general replication, also a general replication to the answer of Mylius to the original bill, which answer does not expressly seek affirmative

relief. The process to answer a cross-bill was served on Mary E. Smith, and the other defendants; but the record discloses no answer by any one to the cross-bill, except that the decree mentions the answer of Mary E. Smith to the cross-bill and the general replication thereto, as among the papers read at the hearing. Mary E. Smith files as an exhibit with her deposition, from a small book, the following account:

November 25, 1879. F. G. Smith.					Dr.
  To cash................................................................................$ 600 00
January 28, 1880. To note and interest on L. Young..............1,600 00
April 20, 1880. To cash..........................................................220 00

Defendant Mylius took the depositions of some five witnesses, and Mary E. Smith of some nine witnesses; and the two causes came on to be heard together on the 19th of October, 1889, when the court decreed "that the deed of trust of Floyd G. Smith to Ebenezer Leonard, trustee, of 15th February, 1883, conveying certain real estate therein mentioned and described, to secure an alleged debt therein mentioned to defendant Mary E. Smith, was fraudulent and void as to the said Charles E. Mylius, and as to his judgment against Floyd G. Smith and James L. Smith for two thousand two hundred dollars, with interest from 15th October, 1887, and costs thereon, and that the said property thereby conveyed to the said Ebenezer Leonard is liable to be sold to satisfy the same." It gave Levi Leonard a decree for two hundred and nineteen dollars seventy six cents, with interest from the 19th of October, 1889, as first lien on the lot sold and conveyed by him to Floyd G. Smith; to Mylius, a decree for two thousand six hundred and twenty six dollars sixteen cents, with interest from that date, and gives forty days for the payment of sums decreed, and then appointed commissioners, who shall in default of payment sell on the usual terms.

From this decree, Mary E. Smith appeals.

Taking the grounds of error in the order assigned in arguments of counsel, we find: The decree is complained of because, "in effect it wholly sets aside the trust-deed to Leonard, trustee, securing appellant her debt, and nowhere in subordination to the Mylius debt or otherwise decrees its

payment." I do not so read and construe this decree. In *Bank* v. *Corder*, 32 W. Va. 232 (9 S. E. Rep. 220) the decree of the Circuit Court not only held the deed fraudulent and void, as to the plaintiff, but expressly set aside and annulled it. In the case of *Love* v. *Tinsley*, 32 W. Va. 25 (9 S. E. Rep. 44) the court below decreed that the deed be set aside, annulled and held for naught. In *Duncan* v. *Custard*, 24 W. Va. 730, the two deeds declared fraudulent by the Circuit Court were by it cancelled *in toto.* In *Murdock* v. *Welles*, 9 W. Va. 552, the deed was declared to be null and void, and was cancelled. In *Burt* v. *Timmons*, 29 W. Va. 441 (2 S. E. Rep. 780) it was impossible for this question to arise, for the court below simply decided, that plaintiff was not entitled to the relief prayed for, and dismissed his bill. The case, however, on this subject, in saying what decree should have been entered, cites with approval the cases of *Murdock* v. *Welles*, and *Duncan* v. *Custard*, above. In *Core* v. *Cunningham*, 27 W. Va. 206; it is said that in that case the deed should have been held fraudulent and void as to the creditors ; that the land should be sold as the wife's, having been conveyed to her; and in *Bank* v. *Wilson*, 25 W. Va. 242, it is held error to cancel and set aside the deed but proper to hold it fraudulent and void as against the creditor.

The decree here complained of seems on this point to have been drawn with these cases in view. It declares the trust-deed fraudulent and void, as to the judgment of Mylius, but does not set it aside. If defendant, Floyd G. Smith or his wife or any person in interest shall pay to Mylius his decree, then the trust-deed stands good between the parties thereto ; and, if this should not be done, and a sale should take place, then, as between husband and wife, the court would decree to her the surplus, or so much as may be necessary to pay her debt.

Should the demurrer to the cross-bill have been fully sustained, and the bill have been dismissed ? Defendant Mylius filed his answer to the bill of plaintiff, Leonard, but he does not allege any new matter therein, on which he relies for or prays affirmative relief; but on the contrary, says he is advised, that as he seeks relief against the trust-deed, he should file a cross-bill to the bill of the plaintiff, and not

here ask for affirmative relief. The court below sustained the demurrer as to the new parties brought in, dismissed it with costs as to them, and it was retained as a cross-bill as to the trust-deed ; and all other matters were to be treated as expunged. Thus reduced to a cross-bill proper I can see no error in permitting it to be so used, instead of dismissing it and requiring the affirmative matter to be set up in the answer. It seems that, although Mylius could make his attack upon the trust-deed by way of answer, it could only be by virtue of some such statute as ours, or by relaxation of the strict rules of equity pleadings, according to which a cross-bill should have been filed to set aside the deed. *Mettert* v. *Hagan,* 18 Gratt. 231. Code, c. 125, s. 35 and cases cited in the margin. This cross-bill as amended is by Mylius against plaintiff, Leonard, and the defendants in the original bill. It seeks to put out of the way of enforcing his judgment, as against defendant Floyd G. Smith, the deed of trust set up in the plaintiff's (Leonard's) bill. It is treated as a mere auxilliary suit. The new parties brought in were turned out with their costs. It was filed without delay, for the purpose of affording defendant Mylius affirmative relief against his co-defendants Floyd G. Smith and wife in regard to the deed of trust.

Should there have been a convening of the lienholders before the decree of sale? Leonard brought his suit asking the Court to ascertain and adjudicate the liens on the real estate, the lien mentioned in the deed of trust, as well as the other liens thereon, according to their priorities, and for a decree of sale. He makes Mylius, the judgment-creditor, a party. He also makes Levi Leonard, who holds a vendor's lien, a party—giving the date and amount and character of each lien. He desires to have the direction and sanction of the Court in executing the deed of trust. Defendant Mylius files his cross-bill, seeking to invalidate the trust-deed as fraudulent. It nowhere appears in the record that there is any other lien of any kind. Still, as the one suit is to enforce a judgment-lien, before a sale is made under the decree, or the proceeds of the sale of the real estate are distributed, the Circuit Court should cause the lienholders to be convened in the mode provided by law.

Did the Court err to the prejudice of appellant in failing
to pass expressly, and before the hearing, upon certain ex-
ceptions taken to certain depositions? The ground, on
which the Court suppresses depositions, is that the interro-
gatories are leading, questions or the answers are scanda-
lous, or for some irregularity in relation to them. In such
cases the depositions may be suppressed before the hearing.
1 Daniell, Ch'y Pr. 951, and note. Evidence of a fact not
in issue may be on motion suppressed before the hearing or
rejected at the hearing, but it is not usual to do so before
the hearing if the evidence is only impertinent. 1 Dan.
Ch'y (Am. Ed.) tit. "Evidence," note 1 (Pr.) Objections
to depositions are taken by exception, stating the
reason, and they should be made before the hearing, and
the exception must be brought to the notice of the Court
for the purpose of obtaining its judgment thereon; if not,
an appellate court will not consider them. *Fant* v. *Miller,* 17
Gratt. 187. Objection to a deposition, on the ground of a
witness's incompetency, should be made at as early a stage
as possible, so as to give the adverse party time to remove
or supply it. So, objections for any irregularity should be
brought by exception duly taken to the attention of the
Court, so that the adverse party may in a proper case have
the opportunity of taking it over or of removing the objec-
tion by proof. Objection can not be made for the first time
in the appellate court. The evidence of a witness, taken in
answer to an (improper) leading question, ought not on that
ground to be suppressed, except by an order of the Court,
made before the hearing of the cause on motion or petition
for that purpose, and founded on an exception indorsed
upon the deposition, within a reasonable time from the re-
turn thereof, and founded moreover on an objection taken
at the time of the examination of the witness, if the party,
his agent or attorney was present. *McCandlish* v. *Edloe,* 3
Gratt. 333. Scandalous matter, not simply impertinent, is
generally thus suppressed, and after reference.

  But we all know what an amount of evidence, seemingly
unimportant at the hearing, will somehow creep into
depositions. In dealing with it practical convenience and
the dispatch of business require that the Circuit Court

should have a very large discretion. To require the court below, in all cases, to take exceptions up and deal with them formally and expressly one by one before the hearing, would be an intolerable burden. In contested chancery causes, in which a large mass of depositions have been taken, we encounter exceptions taken, on some ground, at every page or two on matters, and of a purport, not constituting the weight of a feather for or against the conclusion reached at the hearing. In certain proper cases, which the court readily understands when brought to its attention, it passes upon the exception expressly, and in advance. But as a general rule, it disposes of very many of them silently, and indirectly, at the hearing. Then, if the appellate court should find a deposition with timely exceptions, yet necessary to justify the decree, it sustains the exceptions and reverses the decree. The court below ought not to be required, except when it is unavoidable, to decide a cause piecemeal.

In this case, the ground of exceptions was in the main, that certain questions and answers were as to matters not then, after amendment of cross-bill, in issue, and therefore they were impertinent and immaterial. They were, in the discretion of the Court, properly left to be passed on at the hearing, and the exceptant received no harm by the action of the Court in thus passing upon them and upon the question of competency on another point.

We come now to the controversy involving the merits of the case. Did the court err in holding that, from the pleadings and proofs, the case is for Charles E. Mylius, holding the deed of trust given for Mrs. Smith's debt fraudulent and void as to Mylius's judgment against her husband? It was the duty of the Circuit Court to decide it, and its decision is entitled to weight. The facts of the case are as follows: Mrs. Smith's maiden name was Sexton. She was the daughter of James Sexton and Lucinda, his wife, a daughter of Ebenezer Leonard. The father died in 1872; the mother in 1873. Her grand-father, Ebenezer Leonard, qualified as administrator of her father, and as her guardian. On November 6, 1879, at the age of nineteen, she married the defendant Floyd G. Smith. Considerable property from

her father's estate came into the hands of her guardian. How much in all, we are not told; but her guardian made her the following payments just before her marriage: one hundred dollars, 21st August, 1879; forty dollars 16th September, 1879; and forty six dollars and twenty seven cents, 30th of October, 1879; and the following payments shortly after her marriage, six hundred dollars, 26th November, 1879; one thousand six hundred and two dollars and fifty three cents in the Loyal Young note, 23d December, 1879; and two hundred and twenty three dollars and eighty three cents, 28th June, 1880. She loaned this money and note to her husband, as follows: Six hundred dollars 25th of November, 1879; one thousand and six hundred dollars, Loyal Young note, and interest, 28th of January, 1880; two hundred and twenty dollars 20th of April, 1880. These were express loans made to the husband, which he was to pay back, and they were set down at the time by the wife in a small account book, which she kept with her pocket-book and money. On the 10th of February, 1883, Floyd G. Smith, the husband and his brother James M. Smith, committed a trespass on the person of defendant Charles E. Mylius, for which, on the 15th day of February, 1883, Mylius brought suit against the two brothers. On the 15th February, 1883, Floyd G. Smith executed to his wife his single bill of that date for two thousand four hundred and twenty three dollars and fifty cents, due one day after date, with interest from date; and on the same day, and of the same date, executed to Ebenezer Leonard, trustee, a deed of trust on the real estate therein mentioned and described, to secure the payment of such note or bond, and, having been duly acknowledged, it was admitted to record 16th February, 1883, at 7 o'clock a. m. In case of default made, the trustee was, on request of Mary E. Smith, the beneficiary, to sell in the mode prescribed by law. The Waugh tract of six acres, mentioned in the deed of trust, was conveyed by Jacob Waugh and wife to Floyd G. Smith, by deed of the 29th of January, 1880, consideration six hundred dollars paid, the husband says, out of money borrowed from the wife; but she, in her answer, says the loan was out of her separate estate, but was not furnished for the

purpose of purchasing said real estate, but it was a loan pure
and simple, and for no trust, to her use or for her benefit.
Neither does the husband say any purchase was made in
trust for her.  On the 21st February, 1880, the unpaid
balance of three hundred dollars was paid, and the vendor's
lien released.  The Maxwell property, consisting of two
lots in the town of Buckhannon, mentioned in the trust-
deed, was, for the sum of five hundred and fifty dollars,
conveyed by John Maxwell and wife to Floyd G. Smith,
by deed dated 16th or 6th day of December, 1880; admitted
to record the 9th of December, 1880.  The Levi Leonard
property, being lot No. 34, on Locust street, in the town of
Buckhannon, mentioned in the deed of trust, was, by deed
dated the 15th of December, 1882, conveyed by Levi
Leonard and wife to Floyd G. Smith; acknowledged and
admitted to record on the same day.  The sum of three
hundred dollars was paid in hand; two hundred dollars,
with interest from date, to be paid in one year, and two·
hundred dollars, the residue, to be paid, with interest, in
two years.  On the 15th of February, 1884, Mary E. Smith,
the wife, by check on Buckhannon Bank for two hundred
and fourteen dollars paid to, and lifted from, Levi Leonard,
the first one of these bonds for two hundred dollars, and
this one is made an exhibit.  To make this payment, she
borrowed the money from John E. Smith, her father-in-
law, who put the money in bank to her credit; and she
also paid, in cash, to Levi Leonard, fifty dollars on the re-
maining bond.  What further facts, if any there are, tend-
ing to throw light on the subject, down to the date of
the judgment, do not appear.  On the 15th day of October,
1887, Mylius obtained judgment against Floyd G. Smith,
and his brother James L., for two thousand two hundred
dollars and costs.  Mylius had a writ of *fi. fa.* issued,
which was ineffectual, Mary E. Smith, the wife, claiming
the personal property in the dwelling house of Floyd G.
Smith.  A brother, George W. Smith, claimed the prop-
erty in the marble-shop, and Post and Hudkins certain
notes, bonds and accounts.  All these matters, though set
out in the cross-bill, seem to have dropped out of the
controversy after that bill was amended.

Then followed this bill by Ebenezer Leonard, trustee, on the 24th of October, 1887, setting out his trust-deed; the liens of Levi Leonard and Charles E. Mylius, as the other lienholders; asking the direction of the court in the execution of the trust; and that, in order to enforce them, the liens with their priorities might be ascertained and fixed; followed by the cross-bill of Mylius, impeaching the trust-deed as fraudulent, and the decree here complained of, declaring it fraudulent as to the judgment of Mylius. There was an attempt to show on behalf of Mr. Mylius, that Mrs. Smith's account-book was an after-thought, trumped up for the occasion. Charles W. Newlon, a bank-clerk and an expert in such matters, was shown the account-book, and he said the charges bore the appearance of having been made recently, "not as long as nine years ago;" that Floyd G. Smith had considerable amounts to his credit in bank—in the year 1883, two thousand two hundred and sixty; in 1884, one thousand two hundred and fifty; in 1885, four hundred and fifty five; in 1886, two hundred; in 1887, 12th October, two hundred and fifty—but the wife had none except that already mentioned. On cross-examination he answered various questions as to the character of ink, writing, blotting *etc.*, which I do not deem material. Mrs. Smith, as a witness, said the money was a loan; that the entries in the account-book were made at the dates given when she let her husband have the money. Floyd G. Smith, the husband, said he borrowed from his wife the money, and the Loyd Young bond, which he collected, as charged to her account, and executed his bond to her therefor mentioned in the deed of trust; that he saw his wife's account-book in November, 1879, and often since, and knows the charges were made in it when he borrowed the money, and the Loyal Young bond, and he knew it to be the balance of her share of her father's estate, and had, as yet, paid back none of it.

John T. Courtney, who was frequently at the house, had, in January, 1883, seen her account-book in which she made these charges, and recognizes this as the book.

John A. Hess borrowed money of Floyd Smith, which he got of his wife. She had this account-book and her pocket-book together, but he did not see her write in it.

Parley V. Phillips was at their house during Christmas holidays, 1882, when Mrs. Smith, in the presence of her husband said she loaned all her money to Floyd. The witness had gone to school with Mrs. Smith. She had set him copies. Saw her write often, and knew her writing well; believed the account-book shown to him to be in her handwriting, and, from their appearance, that the entries were made at their date; that he had some experience in such matters.

Ellen M. Smith, the mother-in-law, saw Floyd borrow the six hundred dollars, and saw his wife get her account-book and charge it.

James E. Smith, a brother-in-law, had seen her account-book when she and her husband first went to housekeeping.

C. C. F. McWhorter, clerk of the County Court, was an expert, and, having examined the entries, said from their appearance they may have been made at their respective dates, and that they were all written by the same person.

John A. Hess, clerk of the Circuit Court, after examining the book, said the entries might have been made at their respective dates.

The people of this state, in the spirit of the times, and by the highest manifestation of their own will, required the legislature to pass such laws as might be necessary to protect the property of married woman from the debts, liabilities, and control of their husbands. Article VI, § 49, Const. W. Va. The legislature, among other things, had already enacted that the real and personal property of any female, who may hereafter marry, and which she shall own at the time of marriage, and the rents, issues, and profits thereof shall not be subject to the disposal of her husband nor liable for his debts, and shall be and continue her sole and separate property, as if she were a single woman. And this is still our law on the subject. Code, c. 66, s. 2.

In this case, the money or property belonged to the wife at the time of her marriage. It came to her from her father's estate, and was paid over to her by her guardian. She expressly loaned it to her husband, charging him at

the time, in her account-book kept with her money, with the amount, and the date, and as a slight circumstance tending to show that it was not an after-thought, trumped up for the occasion, she made a mistake of one day in the date of the item of six hundred dollars, putting it the 25th of November, 1879, when it appears that she received it from her guardian on the 26th of November, 1879. In my mind there is no reasonable doubt that this was a loan, not a loan to be implied from the fact that she handed over to him her money, but an express loan, a transaction in which he applied to borrow, she agreed to lend, handed him the money, and at the same time charged him with it in her account-book, giving date and amount. The only uncertain feature about it is the fact, that no time of payment was mentioned. These things are proved not simply by husband and wife, or by the husband's mother and brother, but the evidence of Courtney, Hess, and Phillipps, tends to establish the same fact. The debt did not run on for any length of time, but within three years, and before it was barred, the husband executed his bond for the amount, and made the deed of trust to secure it.

The bringing of the suit by Mylius would seem to have been the occasion of executing the bond and deed of trust at that time. That was a 'suit for assault and battery. Floyd G. Smith does not seem to have then owed any one else a liquidated debt, except a balance of purchase-money to Levi Leonard, secured by vendor's lien retained on the face of the conveyance. He paid one thousand eight hundred and fifty dollars for his real estate, but we are not told what it is worth. He had but little visible personal property beyond what was exempt from levy. He does not seem to have owned any other real estate, but to have had considerable sums of money; for in 1883, the same year in which he executed the deed of trust, he had two thousand two hundred and sixty dollars to his credit in bank, almost enough to have paid off the debt due his wife. He determined to secure his wife's debt against contingencies. He was then under a liability for damages, which four years after were assessed at two thousand two hundred dollars. It is fair to conclude that he intended to secure his wife

while he was free from ordinary debts, and to give her the preference, as far as that property was concerned, over any damages that might be found against him, in favor of Mylius, who had just brought his suit.

If the property coming to her by the death of her father had been land instead of money, it would have been safe from her husband's creditors, because the common law secured it to her. Under the old system, her property would have been vested, perhaps, in a trustee for her use. But now, a married woman relying on our statute is almost certain to lose her personal property. This is due in good part, no doubt, to the transitory nature of that kind of property, to the relation of husband and wife so easily opening a door to fraud, and to jealousy with which the rights of honest creditors are watched, who are induced to give credit on the apparent ownership of the husband. The statute says this personal property shall be and continue her sole and separate property, as if she were a single woman. She may give it to her husband, if she sees fit, and, in dealing with her husband, the presumption, owing to the relation between them, to principles of evidence, and the principles of public policy, would seem to be against her, where his creditors are concerned. A mere receipt by him, or delivery by her, followed by his mingling it with his means, or using it in his business for years, will be treated as a gift not a loan; the law raising no implied promise such as it would raise from such transactions between strangers. And when, in after years, and in failing circumstances, the husband transfers property, directly or indirectly, to his wife, such transfer is justly regarded with suspicion; and, unless it clearly appears that it was entirely free from any wrongful intent or purpose to withdraw the property from the husband's creditors, it will not stand. In such transfers to the wife or to another for her benefit there is a presumption against the wife in favor of the husband's creditors which she must overcome by affirmative proof. *Maxwell* v. *Hanshaw*, 24 W. Va. 405. In *Bank* v. *Atkinson*, 32 W. Va. 203 (9 S. E. Rep. 175) Judge BRANNON says: "Our decisions are rigid, it must be admitted, but, on the whole, are right, and promotive of the highest good faith between debtor and creditor,

and should not be relaxed." *Mayhew* v. *Clark*, 33 W. Va. 387 (10 S. E. Rep. 785).

The case here made on the part of the wife fulfills all these requirements. There is no room, so far as I can see, for any reasonable suspicion as to any element essential to her right to have her debt paid to her out of the property charged with its payment. That this two thousand four hundred and twenty dollars belonged to the wife at the date of her marriage is not questioned. That she made an express loan of it to her husband, charging the items at the time in her account-book, and he an express promise, made at the time, to return it, is made to appear beyond all reasonable doubt. That it was an honest debt, justly due, and secured by deed of trust, and not a previous gift, express or implied, trumped up as a loan for the occasion, clearly appears from the evidence. All that can be said against it is it was preferred as against the liability for damages then sued for. But we have no bankrupt law, insolvent and assignment law, or any law or decision taking away such right to give an honest preference to a just debt; but the right to give such preference has been recognized by a current of binding decisions, running back through two generations. *McCollough* v. *Summerville*, 8 Leigh, 415 ; *Bank* v. *Atkinson*, 32 W. Va. 203 (9 S. E. Rep. 175.)

In this deed of trust there is no fraud in fact, no benefit to the debtor, no harm to the creditor, other than such delay as the statute itself prescribes in such cases. And, if it may be made to redound indirectly to the advantage of the husband, that is due to the fact that his wife is the preferred creditor and to our law, which says: "Her real and personal property shall not be subject to the disposal of her husband, nor be liable for his debts, and shall be and continue her sole and separate property, as if she were a single woman." See *Metsker* v. *Bonebrake*, 108 U. S. 66 (2 Sup. Ct. Rep. 351) and *Bank* v. *Tavener*, 130 Mass. 407. The deed of trust being valid, the right of Mrs. Smith to be subrogated to Levi Leonard's vendor's lien, as to the bond paid and lifted by her to protect her trust-lien, follows, there being no contravening equity. The lien-holders, as here ascertained, and others, if any, should be convened, and the

cause carried on to its conclusion according to the rules of practice in such cases.

REVERSED. REMANDED.